# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

ERIC JOSE BARNETT,          )
                                       )
            Petitioner,     )
                                         )
v.                                    )      **Case No. CIV 12-204-JHP-KEW**
                                         )
CARL BEAR, Warden,          )
                                         )
           Respondent.    )

## OPINION AND ORDER

This matter is before the court on petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate currently incarcerated at Joseph Harp Correctional Center in Lexington, Oklahoma, attacks his conviction and sentence in Okmulgee County District Court Case No. CF-2009-002 for Second Degree Felony Murder. He sets forth the following grounds for relief:

I.     Trial court's refusal to instruct jury on theory of defense deprived petitioner of his Sixth and Fourteenth Amendment rights.

II.    Trial court's exclusion of extrinsic evidence of victim's violent character from jury deliberation violated the Sixth and Fourteenth Amendments.

III.   Prosecutorial misconduct deprived petitioner his right to a fair trial under the Sixth and Fourteenth Amendments.

IV.   Petitioner was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments.

V.    Petitioner's conviction for Second Degree Felony Murder must be vacated because the merger doctrine prohibits using the act that caused the decedent's death as the predicate felony in a felony murder prosecution.

VI.     Under the unique circumstances of this case, imposition of a 23-year sentence for a 17-year-old offender is excessive and should be modified.

VII.    The accumulation of errors deprived petitioner of a fair trial and reliable verdict.

The respondent concedes that petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review. The following records have been submitted to the court for consideration in this matter:

A.     Petitioner's direct appeal brief.

B.     The State's brief in petitioner's direct appeal.

C.     Summary Opinion affirming petitioner's judgment and sentence. *Barnett v. State*, 263 P.3d 959, No. F-2009-698 (Okla. Crim. App. 2011).

D.     Petitioner's petition for rehearing and motion to recall the mandate, filed in the Oklahoma Court of Criminal Appeals on November 21, 2011.

E.     Order Granting Petition for Rehearing in Case No. F-3009-698, entered February 1, 2012).

F.     Petitioner's Application for Evidentiary Hearing on Sixth Amendment Claims, filed in Case No. F-2009-698 on April 20, 2010.

G.     Order ruling on the parties' motions in limine by the Oklmulgee County District Court in Case No. CF-2009-02, filed on May 29, 2009.

H.     Petitioner's reply brief in his direct appeal.

I.     Transcripts of petitioner's jury trial and sentencing.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus

relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Facts**

The Oklahoma Court of Criminal Appeals (OCCA) set forth the facts of this case in

its Opinion affirming petitioner's conviction and sentence:

> Appellant lived with his mother and younger sister in Okmulgee, Oklahoma. On the evening of August 21, 2008, he and two friends were standing outside his house when the decedent, Vernon Sutton, and another man pulled up to the house, got out of the car, and walked toward them. Sutton apparently knew one of the men standing with Appellant from prison. Appellant noticed that Sutton had one blue eye. A black man with one blue eye had raped his mother years before and had been convicted of the crime. Appellant went inside and told his mother that the man who had raped her was standing in the yard.

> Appellant's mother came outside to confront Sutton, who was in fact the convicted rapist who had assaulted her. She asked him if he remembered her. Sutton smiled and said he knew where he was. Appellant's mother angrily demanded that he leave. When he refused, Appellant picked up a length of lumber and went toward Sutton. Sutton prepared to fight, but a passing Okmulgee police officer intervened. When Appellant's mother explained who Sutton was, the officer made him leave the premises. Sutton smirked at Appellant and his mother and told them he would be back, and that he "had something" for them.

> Almost a month later, Appellant received a text from one of his friends, Breylon Griffin, who had been present during the confrontation with Vernon Sutton. Griffin's text told Appellant "dat n*gg*r's ova here" at another house in Okmulgee. Appellant called Griffin and learned that Sutton was visiting

with some other men at a house in Okmulgee.  Appellant called Jennifer McNac and asked her to give him a ride to that location.  She initially refused but then changed her mind.  Appellant was already walking toward the location when McNac picked him up.

As they neared the house, Appellant put the hood of his jacket over his head and covered his face with a bandana.  When they reached the house where Vernon Sutton and others were standing, Appellant leaned out and fired three or four shots, fatally striking Sutton in the chest and abdomen.  Five days after the shooting, Appellant told police in an interview that he was out of town when the shooting happened.  At trial, Appellant admitted the shooting, but said he killed Sutton because he was afraid Sutton would come back to harm his family.

*Barnett v. State*, 263 P.3d 959, 961-62, No. F-2009-698, slip op. at 2-3 (Okla. Crim. App. 2011).  The OCCA's factual findings are entitled to a presumption of correctness, unless petitioner produces clear and convincing evidence to rebut the presumption.  28 U.S.C. § 2254(e)(1).

**Ground I**

Petitioner alleges in Ground I that the trial court's refusal to instruct the jury on his theories of (1) self defense, (2) defense of another, and (3) the lesser-included offense of heat of passion manslaughter deprived him of his rights to due process and a fair trial.  The respondent asserts this is an issue of state law that is not cognizable in federal habeas corpus.

In a habeas corpus proceeding attacking a state court judgment based on an erroneous jury instruction, a petitioner has a great burden.  *Lujan v. Tansy*, 2 F. 3d 1031, 1035 (10th Cir. 1993), *cert. denied*, 510 U.S. 1120 (1994).  A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial.  *Shafer v. Stratton*, 906 F.2d 506, 508 (10th Cir. 1990), *cert. denied*, 498 U.S. 961 (1990).  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Id*. at 155.  The degree of prejudice from the instruction error must be evaluated in the context of the events at the trial.  *United States v. Frady*, 456 U.S. 152, 169 (1982).

*Maes v. Thomas*, 46 F. 3d 979, 984 (10th Cir.), *cert. denied*, 514 U.S. 1115 (1995).

During his trial, petitioner requested that the jury be instructed on self-defense and the defense of others. (Tr. III, 12-14; Dkt. 7-3). The trial court denied the request, reasoning as follows:

> THE COURT: Okay. With that, the Court's going to deny the request for instruction on self-defense and/or defense of another. We're going to adopt the State's objection and argument as the basis for that and just find, as a matter of law, that the evidence is wholly lacking on--on evidence of imminent danger to Mr. Barnett or his family. In fact, the evidence shows that he left the safety and security of his home, left his mother, armed himself, and went in the direction of where the decedent Mr. Sutton was.

> Also, just note for the record, on the way there was a police officer in the area. He did not seek any type of help or assistance from the police officer. In fact took it upon himself to take matters in his own hand and play God and extinguish the life of Mr. Sutton.

> Also the evidence is uncontroverted that Mr. Barnett was the aggressor in this matter. And there is absolutely no evidence that at the date or time of the homicide that Mr. Sutton committed any type of overt act, gesture, or threat to the victim. In fact, he was several blocks away visiting with other individuals when he was gunned down in the street.

> So for those reasons, and those are alternative reasons, the request again for self-defense and/or defense of another is denied.

(Tr. III, 18-19; Dkt. 7-3).

On direct appeal the OCCA denied relief on this issue as follows:

> . . . An instruction of a theory of defense is required "when evidence has been introduced at trial that is adequate to raise that defense, i.e., to establish a prima facie case" of that defense. *Malone v. State*, 168 P.3d 185, 196 (Okla. Crim. App. 2007). Appellant's claim must fail. Evidence that Appellant feared Sutton does not raise an issue of self defense or defense of another, where the evidence showed that Appellant had no reasonable belief that he or his family were in imminent danger of being attacked or killed by Sutton at the time Appellant used deadly force. Instruction Nos. 8-2, 8-6,

OUJI-CR(2d); *Perryman v. State*, 990 P.2d 900, 903-04 (Okla. Crim. App. 1999). . . .

*Barnett*, No. F-2009-698, slip op. at 4 (Dkt. 6-3).

The evidence at trial showed that petitioner was advised that the victim was located a few blocks away. (Dkt. 7-2; Tr. II, 274). He then left his house with a 9 millimeter semi-automatic weapon and a bandana in his pocket and was picked up by a friend while walking to the victim's location. (Tr. II, 117, 286-89). The petitioner would not tell his friend where they were going, but instead gave her turn-by-turn directions on how to get there. (Tr. II, 120-25). On their way to the victim, petitioner and the driver passed a police officer, but did not stop and ask for help. (Tr. II, 121-22). As they tuned down the street where the victim was located, petitioner lifted a hood over his head and wrapped the bandanna around his face. (Tr. II 125-26). He then leaned out of the vehicle and fired three or four shots at the victim. (Tr. II, 127-28). He remained calm the entire time and never indicated he was scared, upset, or out of control. (Tr. II 129-31).

Under Oklahoma law, a defendant must show he reasonably believed that the use of deadly force was necessary to protect himself from imminent danger of death or great bodily harm. *See* Okla. Stat. tit. 21, § 733(A)(2); OUJI-CR 2d 8-2. There was no evidence presented at trial that suggested petitioner's actions were taken to protect himself or others from imminent danger of death or great bodily harm. The court therefore finds the trial court's failure to give the requested jury instructions did not deny petitioner a fair trial, and the OCCA correctly found that the trial court did not abuse its discretion in denying the instructions. The court further finds that the refusal to give the requested instructions did not rise to the level of a due process violation.

As for the requested instruction on first degree heat-of-passion manslaughter, there again is no evidence to support that instruction. Furthermore, "a petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser-included offense instruction, 'even if in our view there was sufficient evidence to warrant the giving of an instruction on a lesser included offense.'" *Lujan v. Tansy,* 2 F.3d 1031, 1036 (10th Cir. 1993) (quoting *Chavez v. Kerby,* 848 F.2d 1101, 1103 (10th Cir. 1988)). Therefore, Ground I is meritless.

**Ground II**

Petitioner next alleges the trial court erred by not allowing extrinsic evidence of the victim's violent character to be presented to the jury. The respondent asserts this is an issue of evidentiary state law that is not cognizable in federal habeas review.

The record shows that petitioner attempted to offer evidence of the victim's violent past as indicated by the victim's two judgments and sentences. The first judgment and sentence showed the victim had been convicted of Feloniously Pointing a Weapon and Unlawful Possession of a Firearm, After Former Conviction of a Felony. The second judgment and sentence was a conviction for Forcible Sodomy of petitioner's mother. The trial court denied the admission:

> THE COURT: And the Court has marked for identification purposes only as Court's Exhibit No. 1, CRF-98-199, which is styled STATE OF OKLAHOMA vs. VERNON SUTTON. It's a certified copy of the judgment and sentence wherein the Defendant Mr. Sutton was convicted or pled guilty to feloniously pointing a firearm and unlawful possession of firearm after former conviction.
>
> Again, the Court's going to find that there has been an insufficient grounds or basis laid by the--by the Defense to support that. There has [sic] been some conversations about some alleged jail time, et cetera, but it does not specifically refer to this--this conviction, and we'd be just speculating as to that's what the Defendant Mr. Barnett is talking about.

Likewise, the Court's marked for identification purpose as Court's Exhibit No. 2, which is CRF-95-156, which is a forcible sodomy charge against Mr. Vernon Lee Sutton. Again that's a certified copy there. The testimony has been about a rape some, I guess 13 years ago or whatever. I don't know that this is the same incident that they are talking about from the face of it. But there's certainly been sufficient testimony from several witnesses of--of Mr. Sutton having committed that offense as against Ms. Barnett.

And so, first of all, I don't think this is relevant in that it is a forcible sodomy conviction and not a rape conviction; and secondly, if it is related to it, it's certainly cumulative and more prejudicial than probative. Again, the testimony's already before the jury, and we'll just let it stand on the oral testimony of the witnesses that had talked about it. And, again, those have been cumulative or been several in nature that have done that.

(Dkt. 7-2; Tr. III, 317-18).

The record shows that petitioner and four other witnesses testified about the petitioner's mother having been raped by the victim 13 years before the murder. (Dkt. 7-1, Tr. I, 218, 223; Dkt. 7-2, Tr. II, 37, 74, 231, 255, 260, 264, 274). This fact also was mentioned in opening statements and closing arguments.

The OCCA reviewed this claim and found no abuse of discretion. *Barnett*, No. F-2009, slip op. at 4 (citing *Hancock v. State*, 155 P.3d 796, 813 (Okla. Crim. App. 2007)). This court agrees that admission of the two judgments and sentences would have been cumulative, petitioner suffered no prejudice from the trial court's ruling, and the trial was not rendered fundamentally unfair. Therefore, Ground II is not cognizable in this habeas action and must be denied.

**Ground III**

Petitioner alleges in Ground III that he was denied a fair trial through prosecutorial misconduct. He specifically complains that the prosecution (1)

8

improperly commented on the petitioner's right to remain silent, and (2) told the jury they had a duty to convict him. Petitioner did not object to these comments at trial, but raised them on direct appeal, where the OCCA found the challenged comments were not improper. *Barnett*, No. F-2009-698, slip op. at 4-5.

> In a habeas corpus action, claims of prosecutorial misconduct are reviewed only for a violation of due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974) (citations and quotations omitted). In order to be entitled to relief, [petitioner] must establish that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 643. This determination may be made only after considering all of the surrounding circumstances, including the strength of the state's case. *See Darden*, 477 U.S. at 181-82.

*Malicoat v. Mullin*, 426 F.3d 1241, 1255 (10th Cir. 2005), *cert. denied*, 547 U.S. 1181 (2006).

The record shows that when petitioner first was questioned by the police, he lied and said he was at his sister's house at the time of the shooting. (Dkt. 7-2, Tr. II 147-54, 254). At trial petitioner admitted he had not told the truth to the police. (Dkt. 7-2, Tr. II, 254). During closing arguments, the prosecutor stated:

> PROSECUTOR: Okay, The alibi, Plan A's gone. The police have figured that one out. And the evidence shows it's not true. So now yesterday you heard Plan B for the first time. For the first time the Defendant takes the stand and says, okay, I did it. But I did it because [the victim is] a bad guy and did a lot of bad things. . . .

(Dkt. 7-3, Tr. III, 36-37).

In a similar case, the Supreme Court held that "[s]uch questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving

*Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." *Anderson v. Charles*, 447 U.S. 404, 408 (1980). Because comments on prior inconsistent statements do not violate a petitioner's right to remain silent, the court finds this comment did not have a substantial and injurious effect on petitioner's trial.

Petitioner also claims the prosecutor made an improper comment invading the province of the jury. The respondent argues that the prosecutor merely was discussing the justice system and how each part functions, and there was no constitutional violation in reminding the jury of this:

> PROSECUTOR: The justice system in this country, in this country, is like a chain. And it's as strong as its weakest link. The police are one chain in it. They did their job.
>
> The witnesses that came and testified, people . . . who were there when this victim took his last breaths on Earth, who came and told you what they saw and what they observed, they are links in this chain.
>
> This District Attorney's Office in presenting its case is a link in the chain. It's our job to bring the facts to you and let you decide.
>
> [Defense counsel] has a job. He's part of it too. He's a link in the chain. He's supposed to represent his client and he's done so well.
>
> The judge is a link in the chain. He's supposed to tell you what the law is that applies and ask you to follow it, to rule over this court.
>
> But there's also one more link left, and that's you guys. You're the jury, and you're a link in the chain of justice. And the chain is only as good as its weakest link.
>
> The facts are here. The law supports what you need to do under the law. Don't be the weak link. Do your duty. You know, just because the choice may be difficult doesn't mean it's not the right one. Just because the choice is something you think that's harsh in some ways, and it's a big

responsibility for me, doesn't mean it's not the right decision. That's why people like you are asked to come to make tough decisions. In this case the State submits it's an obvious decision clearly. But it's nonetheless tough. It's tough to make a decision about the life of someone, isn't it? Very difficult.

Think about Vernon Sutton and who made the decision about his life. Think about what kind of justice he got on the streets of Okmulgee. Give his killer the appropriate justice it requires, a hearing with witnesses and evidence and attorney and a just verdict from a jury. Find him guilty and hold him accountable. That you very much.

(Dkt. 7-3, Tr. III, 54-56).

Inquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase. . . . Counsel's failure to object to the comments, while not dispositive, is also relevant to a fundamental fairness assessment."

*Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (citations omitted), *cert. denied*, 540 U.S. 833 (2003). "Ultimately, we must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly." *Tillman v. Cook*, 215 F.3d 1116, 1129 (10th Cir. 2000) (quoting *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998)).

After careful review, the court finds the prosecutor's comments did not render petitioner's trial fundamentally unfair. The court further finds the OCCA's determination of this claim was not contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d). Ground III is without merit.

**Ground IV**

Petitioner alleges in Ground IV that he was denied the effective assistance of trial counsel. He specifically claims that counsel failed to (1) object to prosecutorial misconduct, (2) call petitioner's mother and Kim Lyons to testify about the victim's violent past, and (3)

remove petitioner's mother from the courtroom. On direct appeal petitioner simultaneously filed an application for evidentiary hearing on claims of ineffective assistance of counsel. The OCCA denied the application for evidentiary hearing and the claim on the merits:

> . . . Ineffective counsel claims must overcome a strong initial presumption that counsel rendered reasonable professional assistance, by showing: (1) that trial counsel's performance was deficient; and (2) that he was prejudiced by the deficient performance. If Appellant demonstrates that counsel's representation was objectively unreasonable under prevailing professional norms, he must also show that he suffered prejudice, defined as a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial or sentencing would have been different. *Hancock*, 155 P.3d at 821. To warrant an evidentiary hearing under Rule 3.11(B)(3)(b)(I), Appellant's application and supporting materials must set forth "sufficient information to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." Reviewing Appellant's application and his arguments, we find no evidentiary hearing is required and no relief is warranted. [This claim] is without merit.

*Barnett*, 263 P.3d at 962-63, No. F-2009-698, slip op. at 5-6.

To prevail on his claim of ineffective assistance of counsel, petitioner must show that (1) his counsel's performance fell below an objective standard of reasonableness, *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694.

The Supreme Court has since expanded the application of *Strickland* in habeas corpus proceedings:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary

premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (emphasis in original).

While the OCCA did not specifically cite to *Strickland* in denying relief, it did cite *Hancock v. State*, 155 P.3d 796, 821 (Okla. Crim. App. 2007), *cert. denied*, 552 U.S. 1029, which set forth the Strickland standard of review. *Barnett*, 263 P.3d at 962, slip op. at 5. The fact that the OCCA did not cite to *Strickland* does not change the correctness of its conclusion that counsel was not ineffective. *See Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) (noting the Circuit Court owes "deference to the state court's *result*, even if its reasoning is not expressly stated" (emphasis in original)).

With respect to the OCCA's denial of petitioner's application for an evidentiary hearing, the OCCA has explained how it analyzes a claim under Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App (2007). *Simpson v. State*, 230 P.3d 888, 905-06 (Okla. Crim. App. 2010). "[W]hen we review and deny a request for an evidentiary hearing on a claim of ineffective assistance under the standard set forth in Rule 3.11, we necessarily make the adjudication that Appellant has not shown defense counsel to be ineffective under the more rigorous federal standard set forth in *Strickland*." *Simpson*, 230 P.3d at 906. The Tenth Circuit subsequently recognized and accepted "'as a matter of federal law' that a Rule 3.11 ruling 'operates as an adjudication on the merits of the *Strickland* claim and is therefore entitled to deference under § 2254(d)(1)." *Wilson v. Trammell*, 706 F.3d 1286, 1312 (10th Cir. 2013) (quoting *Lott v. Trammell*, 705 F.3d 1167, 1213 (10th Cir. 2013)).

Petitioner complains that trial counsel failed to object to several instances of prosecutorial misconduct, as set forth and denied in Ground III. Counsel's failure to present a meritless argument, however, does not constitute ineffective assistance of counsel. *Martin v. Kaiser*, 907 F.2d 931, 936 (10th Cir. 1990) (citing *Strickland*, 466 U.S. at 691-96); *Willingham v. Mullin*, 296 F.3d 917, 934 n.6 (10th Cir. 2002).

Petitioner next alleges counsel was ineffective in failing to call petitioner's mother and Kim Lyons as witnesses to testify about the victim's violent past. Petitioner asserts trial counsel had a fundamental misunderstanding about the trial court's ruling as to Ms. Lyons, and counsel failed to use his professional judgment as to petitioner's mother.

Petitioner listed both his mother and Ms. Lyons as witnesses, and the prosecution filed a motion *in limine* to preclude the testimony of either woman concerning sexual assaults by the victim. The trial court's order granting the motion, however, included a caveat that the ruling was subject to change:

> State's Motion in Limine as to testimony concerning any sexual assault by Vernon Sutton on any person is Sustained; provided said evidence may become relevant if Defendant testifies of his own personal knowledge of said sexual assaults prior to the shooting of Vernon Sutton, and said knowledge was motivation for his shooting of Mr. Sutton.

(Dkt. 6-8).

Petitioner testified at trial, "I learned that [the victim] had raped another person." (Dkt. 7-2; Tr. II, 266). Therefore, petitioner was able to get before the jury the fact that he know the victim also had raped someone other than his mother. The prosecution objected, and petitioner's counsel argued as follows:

> COUNSEL: . . . I thought the ruling on the motion in limine was that it couldn't be proved with extrinsic evidence such as testimony from Ms. Lyons. I thought that was the ruling of the Court's ruling is that the Court was

probably not going to allow Ms. Lyons to testify. But the only--I thought the Court's position was that there's no way that she's testifying unless there was testimony that Eric Barnett knew about what happened to her because otherwise it would be irrelevant.

THE COURT: Uh-huh.

COUNSEL: And that's what--that's what he's doing now is he's testifying that after the August 21st incident, he learned about this other allegation.

THE COURT: Okay. So let's do this for simplicity sake: He's already said that prior to Mr. Barris' objection. So that's already before the jury as far as the allegations of the other rape. Certainly not going to allow you to get into the particulars of the other rape.

COUNSEL: Right.

THE COURT: I am not going to let you do that, so. But he can testify, and then we need to just kind of move on without trying to do that. And I understand where you're going as far as his state of mind. It's just the complexity of how you're going to get that in. So to the extent that answers your question, he's already answered that question. We need to move on. Unless your--

COUNSEL: Just to clarify the Court's ruling, I can't--I'm not--the Court's not going to allow me to prove it with extrinsic evidence like Ms. Lyons' testimony?

THE COURT: Well, I'm not--

COUNSEL: (Interposing) The Court's not--

THE COURT: I'm not going to let her go into the particulars of the rape. I'm not going to let her go and describe blow by blow whatever she can get. Of course, I don't know if I can stop her from testifying that between that time period that she made--she made him aware of that because that's what's important rather than the fact of it, that she made him aware of it. Because we still don't know where this--where it came from. I mean where--where he learned of the allegations against Mr. Sutton.

COUNSEL: Right.

15

THE COURT:  Does that make sense?

COUNSEL:  Yes, sir.

(Tr. II, 269-70; Dkt. 7-2).

Petitioner's knowledge of Ms. Lyons' rape allegation was admitted into evidence through his testimony.  (Tr. II, 266; Dkt. 7-2).  As set forth in the above colloquy between petitioner's counsel and the trial court, Ms. Lyons' testimony was only available to show petitioner knew of her allegations against the victim, a fact that already had been entered into evidence.  Furthermore, it is unclear whether Ms. Lyons was the person who told petitioner of her allegation.  Her affidavit attached to petitioner's application for an evidentiary hearing does not mention that she informed him of her allegation, only that she told petitioner's mother.  (Dkt. 67, 9-10).  Therefore, it is unclear whether Ms. Lyons would have been allowed to testify that she was the person who informed petitioner about her allegations against the victim.

Petitioner claims his counsel was ineffective in not getting admitted Ms. Lyons' testimony that petitioner knew of her allegations.  Petitioner, however, testified that he knew of the allegations, so the evidence actually was before the jury.  Trial counsel's failure to call a cumulative witness does not demonstrate ineffectiveness, so petitioner's claim concerning this issue is meritless.  *See Medina v. Barnes*, 71 F.3d 363, 367 (10th Cir. 1995) (holding that petitioner's counsel was not ineffective in failing to investigate or call cumulative witness).

Petitioner's third claim of ineffective assistance of counsel asserts petitioner's mother should have testified at trial.  The record shows that before the first witness was called, the prosecution invoked the rule of sequestration, and the court directed any witnesses who were present to wait outside the courtroom.  (Tr. I, 178; Dkt. 7-1).  Petitioner's counsel requested

that petitioner's mother and sister be exempted from the rule. (Tr. I, 178; Dkt. 7-1). The court denied the request, stating, "I don't know of any reason to allow an exception for Mrs. Barnett since she's a witness and may or may not testify depending on what Mr. Barnett--Eric Barnett testifies to. *Id.* The next day petitioner's counsel advised the trial court that petitioner's mother would rather watch the proceedings than testify:

> COUNSEL: . . . After court yesterday, Mrs. Barnett told me that she wants to be present in the courtroom for her son's trial regardless of--her not being allowed to testify. And she said that she would rather watch the trial than be a witness. I discussed that with Mr. Barnett--Eric Barnett this morning, and he said that he didn't have a problem with that, with her not testifying.
>
> . . .
>
> THE COURT: As long as she understands, that's fine, and your client understands that.
>
> COUNSEL: Do--do you want to make a record with her?
>
> THE COURT: Not necessarily. I mean, it's actually Mr. Barnett that's running the risk of her staying in here. If you tell me you've discussed with him and that--
>
> COUNSEL: Yes, sir, I did.
>
> THE COURT: --he understands that, the consequence of her staying in, that's fine.
>
> COUNSEL: Absolutely.
>
> THE COURT: And you're not planning on calling her?
>
> PROSECUTOR: No, sir, I'm not. I'm not, so that's fine. I just wanted to be sure the record's clear on that if it comes up later.
>
> THE COURT: Okay. Thank you very much.

(Tr. II 8-9; Dkt. 7-2).

17

Petitioner maintains his mother's testimony was critical to his defense. As noted above, however, evidence that the victim had raped the mother repeatedly came out through the testimony of four witnesses and petitioner himself. (Tr. I, 218, 223; Tr. II, 37, 74, 232, 255-56, 260, 264, 274) (Dkt. 7-1, 7-2). The only additional evidence petitioner's mother could have offered was whether she was the person who told petitioner about Ms. Lyons' allegation. This information, however, was not a critical part of petitioner's defense.

After careful review the court finds the OCCA's adjudication of petitioner's ineffective assistance of counsel claims was not contrary to, or involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d). The court further finds the OCCA's decision was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(2). This ground for habeas relief fails.

## Ground V

Petitioner claims in Ground V that his conviction for Second Degree Felony Murder must be vacated, because the merger doctrine prohibits using the act causing the victim's death as the predicate in a felony murder prosecution. The OCCA denied relief on direct appeal:

> . . . Appellant argues that his conviction for second degree felony murder violates the merger doctrine, or independent crime requirement, recognized by our case law in *Quillen v. State*, 163 P.3d 587 (Okla. Crim. App. 2007), and earlier cases. Although the State charged Appellant in Count 2 with first degree malice aforethought murder, the trial court also instructed the jury on the lesser included offense of second degree felony murder in the commission of using a vehicle to facilitate the intentional discharge of a firearm. The jury acquitted Appellant of first degree murder, but convicted him of second degree murder in the commission of the underlying felony. Counsel's failure to object to the second degree felony murder instruction at trial waived all but plain error. *Eizember v. State*, 164 P.3d 208, 236 (Okla.

18

Crim. App. 2007). We therefore consider whether Appellant's conviction of
second degree murder in the commission of this underlying felony is plain
error; that is, an error which goes "to the foundation of the case," or which
takes from a defendant "a right which was essential to his defense." *Simpson
v. State*, 876 P.2d 690, 695 (Okla. Crim. App. 1994).

Under this Court's merger doctrine, or independent crime requirement,
"[i]n order for the taking of human life in the commission of a felony to
constitute murder, the precedent felony must constitute an independent crime
not included within the resulting homicide." *Sullinger v. State*, 675 P.2d 472,
473 (Okla. Crim. App. 1984). The merger doctrine is a historical feature of
our case law, and is not based on any statutory or constitutional text. *Quillen*,
163 P.3d at 589. . . .

*Barnett*, 263 P.3d at 963 (footnotes omitted).

Appellant argues persuasively that the predicate felony of using a
vehicle to facilitate the intentional discharge of a firearm is *not* independent
from the homicidal act of shooting Vernon Sutton, and that his conviction
therefore violates the merger doctrine set forth in *Quillen*. This case sharply
presents the question of whether the merger doctrine remains an appropriate
limitation of the statutory definition of second degree felony murder. After
careful consideration, the Court abandons this judicially created limitation on
second degree felony murder and overrules *Quillen.*

*Id.*, 263 P.3d at 964. (emphasis in original).[1]

The OCCA concluded that "the current legislative classification of criminal homicides

by their respective degrees, defined by distinct factual elements, obviates the need for the

merger doctrine." *Id.* at 969.

Appellant killed a human being in the commission of using a vehicle to
facilitate intentional discharge of a firearm. He is, at the very least, guilty of
second degree murder under the plain language of section 701.8(2) of Title 21.
His conviction for that offense is authorized by statute, and no plain error

---

[1] Petitioner filed a petition for rehearing by the OCCA, alleging the overruling of *Quillen*
violated the *ex post facto* principles against retroactive judicial decisions. (Dkt. 6-4). The OCCA
granted the rehearing, but denied relief. *Barnett v. State*, 271 P.2d 80 (Okla. Crim. App. 2012; Dkt.
6-5).

occurred. To the extent that *Quillen*, and earlier cases recognizing the merger doctrine as a limitation on the statutory definition of second degree felony murder, . . . are inconsistent with our ruling today, those cases are overruled.

*Id*. at 970 (citations omitted).

This court finds that the issue in Ground V is a matter of state law that is not cognizable in federal habeas corpus. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1995) (per curium)). "Habeas corpus is a civil proceeding and the burden is upon the petitioner to show by a preponderance of the evidence that he is entitled to relief." *Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) (citing *Teague v. Looney*, 268 F.2d 506 (10th Cir. 1959)). Here, the court finds petitioner has failed to present an argument supporting federal habeas relief for this claim.

**Ground VI**

In Ground VI petitioner alleges his 23-year sentence was excessive. The crime of Second Degree Murder in violation of Okla. Stat. tit. 21, § 701.8 has a punishment range of ten (10) years to life imprisonment. Okla. Stat. tit. 21, § 701.9. The OCCA denied relief on this claim, finding the sentence "does not shock the conscience of the Court." *Barnett*, 263 P.3d at 970.

We afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law. *See Haynes v. Butler*, 825 F.2d 921, 923–24 (5th Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988); *see also Handley v. Page*, 398 F.2d 351, 352 (10th Cir. 1968). Generally, our review of a sentence ends once we determine the sentence is within the limitation set by statute. *See Vasquez v. Cooper*, 862

F.2d 250, 255 (10th Cir. 1988).

*Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000), *cert. denied*, 534 U.S. 887 (2001).

      In this instance, the court finds petitioner's sentence was within the statutory range of permissible punishment, so habeas relief is not warranted.

## Ground VII

      Finally, petitioner asserts the accumulation of errors deprived him of a fair trial and a reliable verdict. The OCCA found no error and consequently "no accumulation of error." *Barnett*, 263 P.3d at 970. This court agrees.

      "Cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." *Hoxsie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir.), *cert. denied*, 522 U.S. 844 (1997) (citing *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990)). *See also Castro v. Ward*, 138 F.3d 810, 832-33 (10th Cir.), *cert. denied*, 525 U.S. 971 (1998); *Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002), *cert. denied*, 540 U.S. 833 (2003) ("When reviewing a case for cumulative error, only actual errors are considered in determining whether the defendant's right to a fair trial was violated."). Ground VII of the petition also fails.

      **ACCORDINGLY**, petitioner's petition for a writ of habeas corpus is DENIED, and this action is, in all respects, DISMISSED.

      **IT IS SO ORDERED** this 25th day of September 2015.

James H. Payne
United States District Judge
Eastern District of Oklahoma